**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-1114-WJM-MJW

EUGENE GALLEGOS, and
DIANE GALLEGOS,

      Plaintiffs,

v.

SAFECO INSURANCE COMPANY OF AMERICA,

      Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiffs Eugene and Diane Gallegos ("Plaintiffs") initiated this action on April 18, 2014 against their insurer, Defendant Safeco Insurance Company of America ("Defendant").  (ECF No. 1.)  Plaintiffs allege that Defendant committed a breach of contract, acted in bad faith, and unreasonably delayed with regard to Plaintiffs' coverage claim on their insurance policy issued by Defendant.  (*Id*.)  Before the Court is Defendant's Motion for Summary Judgment ("Motion").  (ECF No. 75.)  For the reasons set forth below, the Motion is granted.

## I.  BACKGROUND

On December 9, 2013, Plaintiffs' home suffered a partial roof collapse[1] allegedly caused by the weight of ice and snow.  (ECF No. 83 at 1.)  Plaintiffs contacted their insurer, Defendant, which inspected the residence and concluded that the roof damage

---

[1]  The roof damage is also described by the parties as a "sag" in the roof and ceiling. (ECF Nos. 75 at 2 & 78 at 17.)

was not covered under Plaintiffs' insurance policy ("the Policy").  (*Id*. at 2.)  Specifically, Defendant stated that the roof sustained damage prior to Plaintiffs' purchase of their home.  (ECF No. 75-5.)  Defendant also maintained that a faulty fastener installation pattern, long-term moisture damage, and improper maintenance contributed to the loss.  (*Id*.)  Defendant thus denied Plaintiffs' claim, and Plaintiffs initiated this action.  (ECF No. 83.)  Plaintiffs dispute Defendant's denial of their claim, and maintain that ice and snow caused the collapse, not the poor condition of the roof or the other bases for denial on which Defendant relied.  (ECF No. 78 at 15-16.)

## II. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute regarding a material fact depends upon whether the evidence presents a sufficient disagreement as to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense, and a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The Court must examine the facts in the light most favorable to the nonmoving party, and resolve factual ambiguities against the moving party.  *Houston v. Nat'l Gen. Ins. Co.*,

817 F.2d 83, 85 (10th Cir. 1987).  The summary judgment standard thus favors a right to trial.  *See id.*

## III.  ANALYSIS

Under Colorado law,[2] courts construe insurance policies "using general principles of contract interpretation."  *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1283 (10th Cir. 2011).  Therefore, absent an ambiguity, a policy's language is construed according to its plain meaning.  *Id*.  However, in recognition of the unique relationship between insurer and insured, courts "construe ambiguous provisions against the insurer and in favor of providing coverage to the insured."  *Id*.  Courts should read policy provisions as a whole rather than in isolation, and may not "extend coverage beyond that contracted for, nor delete [provisions] to limit coverage."  *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).

Under an "all-risk" policy, such as that at issue here, once the insured claims a loss covered by the policy, the burden is on the insurer to prove that the policy excludes the proximate cause of the loss.  *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006).  Any exclusion must be clear and specific to be enforceable.  *Id*.  If the insurer shows that an exclusion applies, "[t]he burden then shifts

---

[2]  Neither party objects to the application of Colorado law, or suggests that another state's law applies, to the interpretation of the Policy.  Federal courts sitting in diversity apply the forum state's choice of law principles.  *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009).  Colorado choice-of-law rules provide that an insurance contract is governed "by the law of the state with the most significant relationship to the insurance contract."  *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).  Plaintiffs are Colorado residents and the Policy insures property in Colorado.  (ECF No. 83 at 1-2.)  Colorado therefore has the most significant relationship to the Policy.  *See Berry & Murphy*, 586 F.3d at 808.

back to the insured to prove the applicability of an exception to the exclusion."  *Id*.

(citation omitted).

Here, Defendant argues that there is no coverage for Plaintiffs' roof damage due

to applicable Policy exclusions.  (ECF No. 75.)  Plaintiffs, however, respond that

Defendant has waived its right to assert its stated grounds for the denial of their claim.

(ECF No. 78.)  The Court discusses both arguments below.

## A.    Whether Policy Coverage Exists

Defendant argues that, because excluded causes contributed to the sag in

Plaintiffs' roof, no coverage exists under the Policy for Plaintiffs' claims.  (ECF No. 75.)

The Policy provides coverage for "accidental direct physical loss to property . . . except

as limited or excluded."  (ECF No. 75-1 at 30.)  However, the Policy contains an "anti-

concurrent causation" clause that significantly limits Defendant's liability, and reads in

relevant part:  "We do not cover loss caused directly or indirectly by any of the following

excluded perils.  Such loss is excluded regardless of any other cause or event

contributing concurrently or in any sequence to the loss."[3]  (*Id.*)  The following are

among the Policy's excluded perils:

> 5. continuous or repeated seepage or leakage of water or
>    steam, or the presence or condensation of humidity,
>    moisture or vapor which occurs over a period of weeks,
>    months or years.

> 6. a. wear and tear, marring, scratching, deterioration;
>    b. inherent defect, mechanical breakdown;

---

[3]  Anti-concurrent causation clauses are enforceable under Colorado law.  *Colo. Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 842 (Colo. App. 2008) (explaining that such a clause "denies coverage whenever an excluded peril and a covered peril combine to damage a dwelling or personal property").

    c. smog, rust or other corrosion, or electrolysis;
    d. smoke from agricultural smudging or industrial operations;
    e. settling, cracking, shrinking, bugling, or expansion of pavements, patios, foundations, walls, floors, roofs, ceilings, swimming pools, hot tubs, spas, or chimneys;
    f. birds, vermin, rodents, insects or domestic animals;
    g. pressure from or presence of plant roots.
. . .

17. Weather that contributes in any way with a cause or event not covered in this section to produce a loss. However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

18. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:

    a. planning, zoning, development, surveying, siting;
    b. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c. materials used in repair, construction, renovation or remodeling; or
    d. maintenance;

of property whether on or off the insured location by any person or organization.

(*Id.* at 30-33.)

Defendant argues that one or more of these exclusions applies to Plaintiffs' claim. (ECF No. 75). In support, Defendant cites the inspection report and deposition testimony of Plaintiffs' expert, Mr. Scott Johnson, of Summit Engineering Company. (*Id.*) Mr. Johnson is an engineer who prepared a report as to the cause of Plaintiffs' roof collapse. (ECF No. 75-8.) In his report, Mr. Johnson states:

The section of the roof that sagged was not well supported. Although the framing system has lasted without a major failure over the span of years that Mr. Gallegos has resided there, it was never in a condition that was strong enough to

5

be able to support the heavy snow loading typical for that site.

(*Id*. at 5.)  Mr. Johnson also testified as to the condition of Plaintiffs' roof during his deposition:

> A.  And, as I said, that roof, in my opinion . . . was just not a very—the wood was damaged or deteriorated, however you want to put it.  The wood wasn't as good as it could be.  And, therefore, it would—it wouldn't take as much of a load to cause trouble for that roof as if it was a brand-new roof.  And even if it was a brand-new roof, I don't think I'd argue at all about the spacing being excessive on the rafters and the joists.
>
> Q.  You don't think the spacing was excessive?
>
> A.  I do think it was.

(ECF No. 75-9 at 7.)  Defendant does not dispute that ice or snow contributed to Plaintiffs' loss.  (ECF No. 75 at 14-16.)  Rather, Defendant argues that Plaintiffs' expert has conceded that the roof was poorly maintained and constructed, which played a role in the roof's collapse.  (*Id*.)  Therefore, according to Defendant, the plain language of the Policy's anti-concurrent causation clause bars coverage.  (*Id*. at 16.)

The Court agrees with Defendant that an excluded event under the Policy contributed to Plaintiffs' partial roof collapse.  The Policy clearly states that wear and tear, deterioration, and inadequate maintenance or construction will exclude coverage, even when combined with a covered loss.  (ECF No. 75-1 at 30-33.)  Plaintiffs' expert reported that the roof was "damaged or deteriorated" and "never in a condition" to support typical snow loads.  (ECF Nos. 75-8 at 5 & 75-9 at 7.)  Once the insurer establishes the applicability of a coverage exclusion, the burden shifts to the insured to prove that an exception to the exclusion applies.  *Leprino Foods*, 453 F.3d at 1287.

6

Plaintiffs have not met this burden.[4]  Plaintiffs do not argue that the roof's deterioration or faulty construction did not exist, only that Mr. Johnson opined that ice damming caused the partial collapse, rather than wear and tear or deficient construction.  (ECF No. 78.)  However, Mr. Johnson stated that the roof was *never* able to support a typical amount of snow, and his report and deposition lack any assertion that the roof's faulty construction or maintenance did not contribute to the loss.  The Court therefore finds that there is no genuine dispute of material fact as to the causes of the partial roof collapse.  Accordingly, there is no coverage under the Policy for the partial collapse of Plaintiff's roof because an excluded event concurrently contributed to the claimed loss.

## B.      Whether Defendant has Waived its Grounds for Denial

Rather than challenge Defendant's interpretation of the Policy, Plaintiffs argue that Defendant waived its current grounds for denial of their claim.  (ECF No. 78 at 15.)  "Generally, an insurer must raise (or at least reserve) all defenses to coverage within a reasonable time after learning of such defenses.  When an insurer denies coverage on specific grounds it waives the right later to assert additional defenses to coverage."  *Pub. Serv. Co. of Colorado v. Wallis & Cos.*, 955 P.2d 564, 571 (Colo. App. 1997), *rev'd*

---

[4]  Neither party raises the issue of coverage under the "resulting loss" Policy exception, which reads: "However, we do insure for any resulting loss from [coverage exclusions] 1. through 6. unless the resulting loss is itself excluded under Building Property Losses We Do Not Cover in this Section."  (ECF No. 75-1 at 31.)  A similar provision follows the exclusion for faulty planning, construction, or maintenance:  "However, any ensuing loss not excluded is covered."  (*Id*. at 33.)  The Court reiterates that at this stage of the dispute the burden is on Plaintiffs to prove that coverage exists despite an exclusion.  *Leprino Foods*, 453 F.3d at 1287.  Accordingly, there is no basis on which the Court could find that the "ensuing" or "resulting" loss provisions would save coverage here.

*on other grounds*, 986 P.2d 924 (Colo. 1999).  To be effective, a reservation of rights

"must be communicated to the insured, and must fairly inform the insured of the

insurer's position." *Commercial Union Ins. Co. v. Roxborough Vill. Joint Venture*, 944 F.

Supp. 827, 838 (D. Colo. 1996).  The Court must thus determine whether the denial

letter and accompanying reservation of rights adequately preserved Defendant's stated

basis for the denial of Plaintiffs' claim.

On January 14, 2014, a representative of Defendant, Daniel Dore, sent Plaintiffs

a letter that explained Defendant's decision to deny coverage.  (ECF No. 75-5.)  The

denial letter stated, in part:

> As you are aware, this claim arises from damage to your
> roof from the weight of ice and snow.  Our investigation
> revealed that your roof sustained damage from historic
> gravity-loading events on your roof that occurred before the
> home was purchased.  There is no evidence that shows this
> damage occurred since the home was purchased in 1999.
> Also, the sags in the ceiling's drywall in the living room is
> due to a fastener installation pattern that is insufficient to
> support the weight of the drywall.  Also, the moisture
> damage to the drywall is long term, which produced a
> punching shear failure of the fasteners.
> . . .
>
> As you can see in the above-referenced policy language
> damage to your property outside of the policy's inception is
> not covered.  Also, damage due to improper maintenance
> and long term presence of moisture is not covered.

The letter also included a reservation of rights:

> Safeco Insurance Company of America may continue to
> investigate this claim.  However, Safeco Insurance Company
> of America reserves any and all rights and defenses allowed
> under the policy of insurance and the law.  No action taken
> by Safeco Insurance Company of America, its employees
> and/or agents, is intended to be or should be considered to
> be a waiver of any of these rights or defenses under the

8

policy of insurance or the law.

(*Id*. at 1-3.)  Plaintiffs argue that Defendant primarily denied their claim due to long-term moisture damage and improper maintenance, but now seeks to exclude coverage because of improper construction or wear and tear as described by Mr. Johnson.  (ECF No. 78 at 14-15.)  According to Plaintiffs, Defendant has waived its right to assert these latter defenses.  (*Id*.)

The Court finds that Defendant has properly asserted an exclusion from coverage in this matter.  While the denial letter does cite moisture damage and "historic gravity-loading events" that occurred prior to Plaintiffs' purchase of the home as bases for denying the claim, the letter also states that "damage due to improper maintenance" is not covered.  (ECF No. 75-5 at 2.)  At least one of Mr. Johnson's observations regarding the roof, *e.g.*, that "the wood was damaged or deteriorated," (ECF No. 75-9 at 7) falls under the exclusion for faulty maintenance of the insured property.  (ECF No. 75-1 at 33.)  Moreover, Defendant's reservation of rights sufficiently informed Plaintiffs of the potential grounds for denial of their claim, as the letter included Policy language describing several exclusions including wear and tear, deterioration, weather, and faulty construction, design, or maintenance—the same Policy language on which Defendant now relies.  (ECF No. 75-5.)  As discussed above, Mr. Johnson testified at this deposition that Plaintiffs' roof was "never in a condition that was strong enough to be able to support the heavy snow loading typical for that site," which further comes within the Policy exclusions for inadequate construction and design.  (ECF No. 75-8 at 5.)  The Court accordingly finds that the denial letter asserted, or at a minimum preserved, all relevant grounds for denial of coverage in this matter.

9

Plaintiffs also assert that whether an exclusion applies is a moot issue because Defendant paid Plaintiffs' claim.  (ECF No. 78 at 3.)  On October 9, 2014 during the deposition of Mr. Gallegos, Defendant's counsel tendered a check for $9,782.00 (the amount claimed to repair Plaintiffs' roof) to Mr. Gallegos, which he accepted.  (ECF No. 75-3 at 6.)  Defendant's counsel, however, expressly stated that the check was not an offer of settlement.  (*Id.*)  Regardless, "waiver cannot have created liability where none existed under the policy."  *Empire Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 764 P.2d 1191, 1198 (Colo. 1988).  In Colorado, "[t]he rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom."  *Id*.  While a case may become moot when a plaintiff is offered the maximum amount recoverable at trial, Plaintiffs do not show how Defendant's payment converted their excluded loss into one covered by the Policy. *See Rudnick v. Ferguson*, 179 P.3d 26, 31 (Colo. App. 2007) ("Accordingly, we conclude the trial court did not err in permitting the [defendants] to tender $150,000 into the court registry and in dismissing the case as moot without requiring the [defendants] to confess judgment, to admit their liability, or to enter into a settlement with the [plaintiffs].").  The Court thus concludes that Defendant's October 9, 2014 payment to Plaintiffs did not result in a waiver of coverage defenses under the Policy, or a confession of Plaintiffs' claims.

For the foregoing reasons, the Court finds that summary judgment should enter in favor of Defendants as to all claims for Policy coverage.  Moreover, summary judgment will enter as to Plaintiffs' remaining claims as well, because, as Plaintiffs

10

concede, without coverage under the Policy, there can be no claims for bad faith or unreasonable delay.  (ECF No. 78 at 15 ("Safeco also argues that if nothing is due under the policy, nothing is due for bad faith or unreasonable delay or denial.  Gallegos agrees.")).  Defendant's Motion is therefore granted in its entirety.

## IV.  CONCLUSION

For the reasons above, the Court orders as follows:

1.  Defendant's Motion for Summary Judgment (ECF No. 75) is GRANTED;

2.  Plaintiffs' Motion for Partial Summary Judgment (ECF No. 71) is DENIED AS MOOT;

3.  Plaintiffs' Motion for Order to Allow Testimony by Video Preservation (ECF No. 114) is DENIED AS MOOT;

4.  Plaintiffs' Motion for Order to Allow Late Disclosures of Non-Retained Expert Witnesses (ECF No. 116) is DENIED AS MOOT; and

5.  The Clerk shall enter final judgment in accordance with this Order and shall TERMINATE this case.  Each party shall bear their own attorneys' fees and costs.

Dated this 4th day of June, 2015.

BY THE COURT:

William J. Martínez
United States District Judge